UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DARLENE M. PORTNER,

                                    Plaintiff,

v.                                                            6:15-CV-00343

                                                              (DNH/TWD)

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

OLINSKY LAW GROUP                           HOWARD D. OLINSKY, ESQ.
*Attorney for Plaintiff*
One Park Place
300 South State Street, Suite 420
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN                   LAUREN MYERS, ESQ.
United States Attorney for the              Special Assistant United States Attorney
  Northern District of New York
*Attorney for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL                   STEPHEN P. CONTE, ESQ.
Social Security Administration              Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## REPORT AND RECOMMENDATION

    This matter was referred to the undersigned for report and recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.

For the reasons discussed below, the Court recommends that the decision of the Commissioner

be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.     BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Darlene M. Portner was born on December 12, 1958, and lives with her two

adult children.  (Administrative Transcript at 47-48.[1])  Plaintiff graduated from high school in

1977, and obtained a nursing aide's certification in 1983.  (T. at 49, 167.)  Plaintiff reported past

work as an office cleaner, babysitter, farm laborer, and teacher's assistant.  (T. at 167.)  Plaintiff

was laid off from work in 2005, and has applied for "simple jobs," like housekeeping.  (T. at

166.)  Plaintiff has not worked since January 30, 2012.  (T. at 52-53.)  Plaintiff alleges disability

due to epilepsy.  (T. at 166.)

On January 30, 2012, Plaintiff protectively filed an application for supplemental security

income ("SSI"), alleging disability as of September 30, 2003.  (T. at 162.)  The application was

denied on June 8, 2012.  (T. at 77-83.)  Thereafter, Plaintiff filed a written request for a hearing

on June 21, 2012.  (T. at 95-97.)  A video hearing was held on May 24, 2013, before

Administrative Law Judge ("ALJ") Bruce S. Fein.  (T. at 44-76.)  Plaintiff appeared in Utica,

New York, and the ALJ presided over the hearing from Syracuse, New York.  *Id*.  At the

hearing, Plaintiff was represented by Sean Grobosky, an attorney with the Olinsky Law Group.

*Id*.  On September 9, 2013, the ALJ issued a decision finding that Plaintiff was not disabled.  (T.

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be
referenced as "T." and the Bates-stamped page numbers as set forth herein will be used rather than the numbers
assigned by the Court's CM/ECF electronic filing system.

at 10-27.)  The ALJ's decision became the final decision of the Commissioner when the Appeals

Council denied Plaintiff's request for review on January 20, 2015.  (T. at 1-6.)  Plaintiff timely

commenced this action on March 24, 2015.  (Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that

he or she is "unable to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months."  42

U.S.C. § 1382c(a)(3)(A) (2015).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("SSA") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

3

> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.

Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working. *Id.*

### B.     Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision. 42

U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). If supported by substantial evidence, the ALJ's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. A reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[3] On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

## III.  THE ALJ'S DECISION

The ALJ found that Plaintiff has the following severe impairments: asthma, degenerative disc disease, and complex partial seizures.  (T. at 12-13.)  He found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 13-14.)  The ALJ found that Plaintiff has the residual functional capacity ("RFC"), to:

> perform less than a full range of light work as defined in 20 CFR 416.967(b) with restrictions to being able to stand and/or walk for six hours in an eight hour workday; can sit for six hours in an eight hour workday; can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but can never climb ladders, ropes, and scaffolds; and must avoid concentrated exposure to temperature extremes, humidity/wetness, fumes, odors, dusts, gases, and hazards, such as machinery and heights.

(T. at 14-15.)  In reaching this conclusion, the ALJ afforded "some weight" to the opinions of Plaintiff's treating physicians, Kishan Patel, M.D., and Sarah Shirazi, M.D., and "little weight" to the opinion of Plaintiff's chiropractor, Mark Anken, D.C.  (T. at 21-25.)  Plaintiff has no past relevant work.  (T. at 25.)  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id*.  "After careful consideration of all the evidence," the ALJ concluded that Plaintiff has not been under a disability within the meaning of the SSA since January 30, 2012, the date the application was filed.  (T. at 26.)

## IV.  THE PARTIES' CONTENTIONS

Plaintiff claims that the RFC determination by the ALJ was not supported by substantial evidence because the ALJ allocated inadequate weight to the opinions of Plaintiff's treating physicians and the credibility determination was incorrect; and that the step five finding was not supported by substantial evidence because the ALJ did not consult a vocational expert.  (Dkt. No.

12.)  Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence.  (Dkt. No. 13.)

## V.      ANALYSIS

### A.      Opinion Evidence and the RFC Determination

Plaintiff argues that the ALJ allocated inadequate weight to Plaintiff's treating physicians' medical opinions in contravention of the treating physician rule and its caveats.  (Dkt. No. 12 at 5.[4])  In response, the Commissioner argues that the ALJ properly evaluated all of the medical evidence.  (Dkt. No. 13 at 6-12.)

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 416.945(a)(1).  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 416.946(c).  In determining the RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 416.945(a).  Age, education, past work experience, and transferability of skills are vocational factors to be

---

[4]  Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 416.969a(b).  Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching.  *Id*. §416.969a(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record."  *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).  Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations.  *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted).  "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient."  *Roat*, 717 F. Supp. 2d at 267 (citation omitted).  "RFC is then used to determine the particular types of work a claimant may be able to perform."  *Whittaker*, 717 F. Supp. 2d at 440.

### 1.    Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals.  "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight."  20 C.F.R. §

416.927(c)(2). "Medically acceptable techniques include consideration of a patient's report of complaints, or the patient's history, as essential diagnostic tools." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight the Commissioner will give to the physician's medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 416.927(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical

experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 416.927(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133; 20 C.F.R. § 416.927(d).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 416.927(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

### 2. Opinion of Kishan Patel, M.D.

Plaintiff argues that the opinion of Dr. Patel should have been given greater, if not controlling weight. (Dkt. No. 12 at 8-9.) For the reasons discussed below, the Court agrees with the Commissioner that the ALJ's assignment of "some weight" to Dr. Patel's opinion was proper because the opinion was not consistent with Dr. Patel's treatment records, and the medical evidence overall. (Dkt. No. 13 at 8.)

Dr. Patel completed a medical source statement dated May 25, 2013. (T. at 374-75.) Dr. Patel stated that he treated Plaintiff every six months since 2009, and diagnosed her with complex partial seizures that were both generalized and localized. (T. at 374.) He noted that she

had daytime and nocturnal episodes that lasted a couple of minutes each, and occurred about one time per month.  *Id*.  During and immediately after Plaintiff's seizure, Dr. Patel indicated that others must put something soft under her head, remove her glasses, loosen tight clothing, clear the area of hard or sharp objects, and turn Plaintiff to her side to allow salvia to drain from her mouth.  *Id*.  Dr. Patel noted that Plaintiff had confusion and exhaustion due to seizures.  *Id*.  Plaintiff had no history of injury during a seizure.  *Id*.  Although Plaintiff was compliant with her medication[5] and had no side effects, Dr. Patel opined that Plaintiff's seizures were likely to disrupt co-workers and that Plaintiff would need more supervision than an unimpaired worker.  (T. at 375.)  He estimated that Plaintiff would be off-task ten percent of the workday and absent about one day per month due to her impairments or treatment.  *Id*.  Finally, Dr. Patel opined that Plaintiff had no other limitations that would affect her ability to work at a regular job on a sustained basis.  *Id*.

Plaintiff argues that the ALJ erred by failing to consider the regulatory factors when assigning Dr. Patel's opinion "some weight" and that there is no indication that he ALJ underwent an analysis of the requisite factors when weighing Dr. Patel's opinion.  (Dkt. No. 12 at 8.)  Specifically, Plaintiff alleges that the ALJ should have considered that Dr. Patel is a neurologist treating Plaintiff for seizure disorder, and that Plaintiff began treating with Dr. Patel in 2009, with a frequency of visits every six months.  *Id*. at 9.  Plaintiff further argues that Dr. Patel's opinion was supported by other opinion evidence.  *Id*.

---

[5]  Plaintiff's medications include Depakote and Zonegran.  (T. at 55, 186-87.)  Depakote (Divalproex) is used to treat manic episodes associated with bipolar disorder, as well as certain types of seizures and migraines.  *See* http://www.pdrhealth.com/drugs/depakote (last visited Jan. 29, 2016).  Zonegran (Zonisamide) is taken with other medications to treat partial seizures in adults.  *See* http://www.pdrhealth.com/drugs/zonegran (last visited Jan. 29, 2016).

Though Plaintiff contends that Dr. Patel's opinion should have been provided more, if not controlling weight, the Regulations provide that the opinion of a treating source will be given controlling weight only when it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. *See* 20 C.F.R. § 416.927(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1 (SSA July 2, 1996).

As the ALJ discussed, Dr. Patel's opinion was not consistent with other substantial evidence of record, including Dr. Patel's own treatment notes. (T. at 22-23.) For instance, Dr. Patel's May 15, 2012, encounter note indicates that Plaintiff's last seizure was in February 2012, which lasted approximately thirty seconds. (T. at 315.) At that appointment, Plaintiff reported "feeling well" and denied any complaints. *Id.* In contrast, Plaintiff's primary care physician, Dr. Shirazi stated that Plaintiff experienced a seizure once every three to six months. (T. at 425.) Plaintiff also testified that any "effects" from a seizure last approximately twenty seconds to one minute, and that she may sit down and rest for ten or fifteen minutes after a seizure. (T. at 54-55.) Plaintiff denied any significant side effects from her medication. (T. at 56-57.)

Approximately one year later, on May 23, 2013, Dr. Patel noted that Plaintiff appeared to be doing "fairly well in terms of her seizure control" and that her last documented seizure was in August 2012. (T. at 412.) Plaintiff was to continue her regimen of Depakote and Zonisamide. *Id.* Dr. Patel noted that given Plaintiff's lack of associated symptoms, Plaintiff's reported episodes of dizziness did not appear to represent seizures or another neurologic entity, but rather possibly represented an inner ear issue. *Id.* On physical examination, Plaintiff had normal concentration and attention span, full (5/5) motor strength in all extremities, intact sensation in all extremities, and normal finger-to-nose and heel-to-shin tests. (T. at 411.)

Plaintiff's argument that the ALJ failed to appropriately consider the regulatory factors when assigning Dr. Patel's opinion non-controlling weight is without merit. (*See* Dkt No. 12 at 9.) Here, the ALJ considered the length, nature, and extent of the treating relationship, and the consistency of the opinion with other evidence of record. (*See* T. at 22-23.) For instance, although Dr. Patel reported seeing Plaintiff every six months since 2009, Plaintiff testified in March 2012, that her last appointment with Dr. Patel was in May 2011, and her next appointment was in April 2012. (T. at 185-88.) The ALJ further noted that Dr. Patel's opinion that Plaintiff would be off-task ten percent of the time was not supported by any rationale, and did not appear to be from seizure episodes, as he only opined that she would have about one seizure per month, lasting for a couple of minutes. (T. at 22-23, 375.) Plaintiff testified, however, that she had one seizure every three to four months, lasting for approximately one minute. (T. at 53, 240, 242, 315.) Finally, Dr. Patel did not provide any opinion related to Plaintiff's ability to lift, carry, sit, stand, or walk. (*See* T. at 374-75.)

Based upon the above, the Court finds that the ALJ gave good reasons for affording "some weight" to Dr. Patel's opinion.

### 3. Opinion of Sarah Shirazi, M.D.

Plaintiff argues that Dr. Shirazi's June 3, 2013, medical source statement was "improperly discounted." (Dkt. No. 12 at 9.) The Court agrees with the Commissioner that the ALJ appropriately afforded "some weight" to Dr. Shirazi's opinion. (Dkt. No. 13 at 11-12.)

In the medical source statement, Dr. Shirazi stated that she treated Plaintiff every four to six months for two years. (T. at 423.) She diagnosed Plaintiff with epilepsy, osteoporosis, hypercholesterolemia, and allergies. *Id.* She noted symptoms of seizures, joint pain, mood swings, and allergies. *Id.*

Significantly, Dr. Shirazi opined that Plaintiff does not have any limitation in sitting, standing, or walking if she does not have seizures, which occur once every three to six months. *Id*. She opined that Plaintiff could occasionally lift ten pounds; frequently lift less than ten pounds; occasionally twist, bend, crouch, climb ladders, and climb stairs; and frequently look down, turn her head, look up, or hold her head static. (T. at 424.) Dr. Shirazi stated that Plaintiff would need to take unscheduled breaks, and would have good days and bad days. (T. at 425.) Although she indicated that Plaintiff experiences a seizure once every three to six months, Dr. Shirazi opined that Plaintiff "cannot get a job" due to her "breakthrough seizures." *Id*.

Here, the Court finds that the ALJ provided good reasons for assigning "some weight" to Dr. Shirazi's opinion. (T. at 23-24.) As an initial matter, Dr. Shirazi's statement that Plaintiff "cannot not get a job" because of her seizures relates to an issue reserved to the Commissioner, and therefore is not entitled to any special weight. 20 C.F.R. § 416.927(d); SSR 96-5p, 1996 WL 374183, at *1 (SSA July 2, 1996).

The ALJ appropriately discussed the inconsistencies between Dr. Shirazi's opinion and Plaintiff's testimony. (T. at 23-24.) For instance, Dr. Shirazi limited Plaintiff to lifting and carrying only up to ten pounds occasionally, yet Plaintiff testified that she was able to lift fifteen pounds and that the most she could lift was thirty pounds. (T. at 24, 69, 180, 424.) Moreover, there was a lack of objective or laboratory findings to support Dr. Shirazi's limitation with lifting and carrying. (T. at 24.) Dr. Shirazi indicated that the side effects associated with Plaintiff's medication included chronic fatigue, nausea, vomiting, dizziness, and sleep disturbances. (T. at 423.) Plaintiff testified, however that she did not have side effects from her medication. (T. at 23, 56.)

Plaintiff contends that the ALJ should have evaluated the regulatory factors, specifically, the longitudinal history of Plaintiff's treatment with Dr. Shirazi, and afforded more weight to Dr. Shirazi's opinion. (Dkt. No. 12 at 10.) Although the record indicates that Plaintiff treated with Dr. Shirazi at least eleven times, most of Plaintiff's visits to Dr. Shirazi occurred before the relevant period, which began on January 30, 2012. (T. at 247, 254, 256, 261, 266, 277, 283.) Plaintiff only saw Dr. Shirazi on three occasions during the relevant period and those visits were for sinus and gastrointestinal issues. (T. at 381-82, 388-89, 392-93.) On January 23, 2012, just a few days before the relevant period, Dr. Shirazi's encounter note reflects that Plaintiff's seizure disorder has been "well controlled" and Plaintiff had a normal neurological examination that day. (T. at 409-10.)

Accordingly, the Court finds that the ALJ gave good reasons for assigning Dr. Shirazi's opinion "some weight."

### 4. Opinion of Mark Anken, D.C.

Plaintiff contends that the ALJ did not appropriately consider the opinion evidence from her chiropractor, Dr. Anken. (Dkt. No. 12 at 10-13.) The Court agree with the Commissioner that the ALJ gave appropriate weight to Dr. Anken's opinion. (Dkt. No. 13 at 11-12.)

Initially, chiropractors are not considered "acceptable medical sources" to establish whether a claimant has a medically determinable impairment. 20 C.F.R. § 416.913; *see also* SSR 06-03p, 2006 WL 2329939, at *2 (SSA Aug. 9, 2006) (information from other sources cannot establish the existence of a medically determinable impairment). Evidence from other sources, such as a chiropractor's opinion, may be used to demonstrate the severity of a claimant's impairment and how it affects a claimant's ability to work. 20 C.F.R. §

416.913(d)(1).  However, the opinions of such other sources are not entitled to controlling weight inasmuch as they are not "acceptable medical sources."  *Id*. § 416.913(a).

Nevertheless, the opinions of other sources must be considered because the court is required to evaluate all evidence that comes before it.  *Id*. § 416.927(c).  In some situations, the opinions of other sources may be entitled to some extra consideration.  *See Kohler v. Astrue*, 546 F.3d 260, 268-69 (2d Cir. 2008) (finding that the nurse practitioner's opinion should have been given some consideration because she was the only medical professional available to claimant for long stretches of time in the very rural North Country); *but see Diaz v. Shalala*, 59 F.3d 307, 316 (2d Cir. 1995) (finding that the ALJ did not have to give controlling weight to a chiropractor's opinion).  The ALJ should explain the reasons for the weight given to these opinions, or otherwise ensure that the discussion of the evidence in the decision allows a claimant to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.  SSR 06-03p, 2006 WL 2329939, at *6.  The factors required for analysis of a treating physician's opinion can also be applied to opinion evidence from other sources.  SSR 06-03p, 2006 WL 2329939, at *4.

In the medical source statement dated May 21, 2013, Dr. Anken stated that he has treated Plaintiff since 2000 for neck and back pain.  (T. at 370-72.)  He opined that Plaintiff could sit for two hours in a workday; stand and/or walk for two hours in a workday; could rarely lift less than ten pounds; could occasionally twist and bend; could frequently crouch, could never climb ladders; and could rarely to occasionally climb stairs.  (T. at 371.)  He opined that Plaintiff could rarely look down, turn her heard, or look up, and she could occasionally hold her head in a static position.  *Id*.  Dr. Anken indicated that Plaintiff would need unscheduled breaks during a workday, the length and frequency of which would depend upon Plaintiff's pain and seizure

disorder. (T. at 372.) He estimated that Plaintiff would be off-task twenty percent of the time and would miss about four days of work per month due to her impairments or treatment. *Id.*

Here, the ALJ considered Dr. Anken's opinion under SSR 06-09p, and appropriately assigned "little weight" to the opinion because it was not supported by the totality of the record. (T. at 24-25.) Specifically, the ALJ assigned Dr. Anken's opinion "little weight" because the degree of limitation was not supported by clinical findings, there was no significant evidence or neurologic compromise that would impact Plaintiff's ability to stand, walk, or sit to the degree as indicated, and Plaintiff only had routine outpatient care with Dr. Anken. (T. at 25.) Only three examination records from the relevant period were supplied by Dr. Anken, and those findings only included tenderness to Plaintiff's spine. (T. at 369, 376-77.) Plaintiff self-reported that her symptoms were aggravated by bending at the waist, twisting from one side to the other, and by activities of daily living, such as lifting and walking. (T. at 369.)

Dr. Anken's opinion is also inconsistent with other opinion evidence. On March 30, 2012, Plaintiff was examined by consultative examiner, Pamela Tabb, M.D. (T. at 301.) On examination, Plaintiff's cervical and lumbar spine showed full flexion, extension, and lateral flexion bilaterally, and full rotary movement bilaterally. (T. at 303.) There was no scoliosis, kyphosis, or abnormality in Plaintiff's thoracic spine. *Id.* Plaintiff had full range of motion in all extremities and negative straight leg raise tests bilaterally. *Id.* Her joints were stable and non-tender. *Id.* There was no redness, heat, swelling, or effusion. *Id.* Plaintiff walked with a normal gait and could walk on her heels and toes without difficultly. (T. at 302.) She could squat fully, and was able to rise from a chair without difficulty. *Id.* She needed no help changing for the examination or getting on and off the examination table. *Id.* Plaintiff reported that she cooks, cleans, does laundry, showers, and dresses herself. *Id.* She watches television, listens to the

radio, and reads. *Id.* She socializes with friends, attends church, and shops. *Id.* Dr. Tabb gave Plaintiff a stable prognosis. (T. at 304.) Overall, she opined that Plaintiff should avoid driving or operating machinery, and should avoid smoke, dust and other known respiratory irritants. *Id.*

Moreover, the diagnostic tests do not indicate that Plaintiff would be as limited as Dr. Anken's opinion. (T. at 25.) The August 20, 2011, MRI of Plaintiff's lumbar spine revealed no evidence of acute fracture, and no evidence of spinal stenosis, significant disc herniation, or mass effect on the thecal sac. (T. at 386-89.) The March 30, 2012, X-ray of Plaintiff's lumbosacral spine was a negative study, which showed the height of the vertebral bodies and intervertebral disc spaces relatively well maintained and that the pedicles were intact throughout. (T. at 304-05.) Finally, despite Plaintiff's self-reported history of back pain, Dr. Shirazi opined that Plaintiff had no limitations sitting, standing, or walking, if her seizures were controlled. (T. at 423-24.) Plaintiff also testified that Advil relieved her back and neck pain. (T. at 64.)

In this case, the ALJ properly considered and discounted Dr. Anken's opinion for its inconsistency with other medical evidence. Accordingly, the Court finds that ALJ gave good reasons for assigning Dr. Anken's opinion "limited weight." (T. at 24-25.)

**B**.    **Credibility Evidence and the RFC Determination**

In addition to reviewing the medical evidence in determining the RFC, the ALJ must review the credibility of the claimant. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.

20 C.F.R. § 416.929; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2, 1996). The ALJ is required to consider all of the evidence of record in making his credibility assessment. *Genier*, 606 F.3d at 50; 20 C.F.R. § 416.929(a)(3).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." SSR 96-7p, 1996 WL 374186, at *2. This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms. *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about her pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *See Grewen v. Covlin*, No. 1:11-CV-829, 2014 WL 1289575, at *4, 2014 U.S. Dist. LEXIS 41260, at *10 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to

establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of [an individual's statements is their] consistency, both internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Id.* (citation omitted).

A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  SSR 96-7p, 1996 WL 374186, at *3.  When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain symptoms. 20 C.F.R. § 416.929(c)(3)(i)-(vii).

1.      Plaintiff's Credibility

The ALJ found that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff.  (T. at 19-20.)  However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible.  (T. at 20-21.)

Plaintiff argues that the ALJ erred in the assessment of her credibility.  (Dkt. No. 12 at 14-15.)  Specifically, Plaintiff claims that the ALJ improperly accounted for Plaintiff's activities of daily living and failed to state how her "limited abilities" to perform daily activities demonstrated her ability to perform consistent work.  *Id*.  Plaintiff further argues that the ALJ mischaracterized Plaintiff's testimony and as such, improperly "discredits" her testimony for inconsistencies in the record.  *Id*. at 15.  The Court agrees with the Commissioner that the ALJ's credibility finding was proper and supported by substantial evidence.  (Dkt. No. 13 at 13-15.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 2, 1999)); *Ferraris*, 728 F.2d at 587.  "A finding that a [claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the ALJ makes must be consistent with the medical and

other evidence." *Id.* at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10, 2003 U.S. Dist. LEXIS 6988, at *30 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statements regarding the severity of her symptoms and limitations. (T. at 17-18.) In making his credibility assessment, the ALJ considered a number of factors, including discrepancies in Plaintiff's various statements and in her testimony with regard to the nature and scope of her daily activities. 20 C.F.R. § 416.929; SSR 96-4p; SSR 96-7p.

Despite Plaintiff's argument to the contrary, the ALJ did not improperly consider Plaintiff's daily activities. (Dkt. No. 12 at 14-15.) The record shows that Plaintiff's extensive daily activities involve feeding chickens and gathering eggs, cleaning, doing laundry, ironing, washing dishes, working on a computer, and preparing meals. (T. at 65-66. 178.) Plaintiff goes grocery shopping once or twice a month. (T. at 67, 179.) She is able to walk around the grocery

store for two hours, and does not need any assistance carrying her grocery bags. *Id.* Plaintiff enjoys playing basketball and volleyball, and fishes seasonally. (T. at 179.) In fact, on January 7, 2013, Plaintiff fractured a finger on her left hand while playing volleyball. (T. at 383.) Notably, while seeking medical treatment for her fractured finger, Plaintiff reported "no seizures" and "no sleep disturbances." *Id.* Plaintiff attends church four times per week. (T. at 180.) She enjoys reading, crocheting, and watching television. (T. at 179.) Plaintiff testified that she goes for walks every other day for about thirty minutes. (T. at 68.) Indeed, on April 22, 2013, after walking three miles, Plaintiff complained of left leg cramping but had no other pain. (T. at 379.)

While Plaintiff contends that these "limited activities to perform daily activities" are not indicative that Plaintiff could perform full time work (Dkt. No. 12 at 14-15), the ALJ properly considered the extent of Plaintiff's activities of daily living and that they belied claims of total disability. (T. at 20.)

Furthermore, the determination that Plaintiff could perform light work with restrictions, is consistent with the clinical findings and opinions of the record. Under certain circumstances a subjective experience of pain may support a finding of disability. *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) (citing *Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)). This is not such a case. A claimant who alleges disability based on pain does not have to provide direct medical evidence confirming the extent of the pain, however there must be medical signs and laboratory findings that show that the claimant has a medical impairment which could reasonably be expected to produce the pain. *Id.*; 20 C.F.R. § 416.929.

Here, the lack of treatment for back pain and lack of medical signs and laboratory findings regarding her pain support the ALJ's determination of Plaintiff's credibility in that

regard. Indeed, Plaintiff testified that she only sees her chiropractor when she needs to, approximately once a month. (T. at 60-61.) Regarding her alleged difficulty climbing stairs, Plaintiff testified that she has only told Dr. Anken about her hip problem, and after "it gets put back in, it's fine." (T. at 71.) Plaintiff testified that hot showers and Advil relieved her pain. (T. at 64.) Plaintiff complained of pain at appointments with Dr. Anken in February, March, and April of 2013, but denied any pain to Dr. Patel in May 2013. (T. at 369, 376-77, 411.) Plaintiff alleged that her medications affect her ability to sleep well at night, but she still managed to sleep seven hours and testified that she feels well rested when she wakes up in the morning, and has no problems with her personal care. (T. at 56, 64, 186, 411.) Plaintiff denied experiencing any side effects from her medication, but she also reported that her medication causes her "to forget more, repeat more, [and] see double." (T. at 56, 186, 315, 411.) Finally, as discussed above, the August 20, 2011, MRI and March 30, 2012, X-ray of Plaintiff's spine were insignificant. (See T. at 386-89, 304-05.)

In this case, the ALJ found that Plaintiff's allegations of disabling symptomatology were not credible to the degree alleged. (T. at 21.) The ALJ determines issues of credibility, and deference should be given to his judgment because he heard Plaintiff's testimony and observed her demeanor. *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005, 2010 WL 2776978, at *5-7, 2010 U.S. Dist. LEXIS 70411 (N.D.N.Y. July 14, 2010). Based upon the above, the ALJ did not err in his assessment of Plaintiff's credibility. Accordingly, the Court finds that Plaintiff's RFC is based upon proper legal standards and is supported by substantial evidence.

## C.    Step Five Determination

Plaintiff lastly argues that the ALJ erred in relying solely on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "grids"), to determine that she was capable of performing jobs that exist in significant numbers in the national economy.  (Dkt. No. 12 at 15-17.)  Plaintiff contends that her nonexertional limitations related to her seizure disorder required the testimony of a vocational expert.  *Id.*  The Court agrees with the Commissioner that the ALJ appropriately used the grids as a framework to find Plaintiff not disabled.  (Dkt. No. 13 at 15-17.)

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable grids.  *Rosa*, 168 F.3d at 78 (citing omitted).  The grids take into account the claimant's RFC in conjunction with the claimant's age, education, and work experience.  *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy."  *Id.*

"[E]xclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  *Rosa*, 168 F.3d at 78 (finding the ALJ erred in applying the grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments).  "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment."  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).  This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work.  *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)).  An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive her of a meaningful employment opportunity.  *Id.* (finding that the

ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by her exertional limitations, the ALJ is required to consult with a vocational expert. *Zabala*, 595 F.3d at 410 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986) (citations omitted)). A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997)). The existence of nonexertional limitations does not automatically preclude reliance on the grids, or require that the ALJ consult a vocational expert. *Id.* Where the claimant's nonexertional limitations did not result in an additional loss of work capacity, an ALJ's use of the grids is permissible. *Zabala*, 595 F.3d at 411.

Here, the ALJ considered Plaintiff's RFC, age, education, and work experience, and relied exclusively on the grids to make the step five determination that Plaintiff was not disabled. (T. at 24-25.) Indeed, "[a]fter careful consideration of the entire record," the ALJ concluded that the framework of Rule 202.20 supports a finding of "not disabled" as of January 30, 2012, the date Plaintiff filed her application, and that the occupational base of a wide range of jobs in the light exertional category was not significantly eroded by Plaintiff's nonexertional limitations. (T. at 26.) Related to Plaintiff's seizure disorder, Plaintiff's RFC restricts her from hazards, such as machinery and heights. (T. at 15.) Notably, SSR 85-15 provides that "[a] person with seizure disorder who is restricted only from being on unprotected elevations and near dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels." SSR 85-15, 1985 WL 56857 (Jan. 1, 1985).

Therefore, substantial evidence supports the ALJ's finding that Plaintiff's nonexertional

impairments do not significantly reduce her occupational base.  Under these circumstances, the

testimony of a vocational expert or other similar evidence regarding the existence of jobs

Plaintiff could perform in the economy was unnecessary.  *See Lawler v. Astrue*, 512 F. App'x

108, 112 (2d Cir. 2013).  Accordingly, remand is not warranted on this ground.

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct

legal standards, and substantial evidence supports his determination that Plaintiff was not under a

disability within the meaning of the SSA.  20 C.F.R. §416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's

motion for judgment on the pleadings be **GRANTED** and the Complaint (Dkt. No. 1) be

**DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of the

Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

**PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated: January 29, 2016
         Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge